United States District Court
Southern District of Texas
**ENTERED**
May 25, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| CHASE YARBROUGH, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:20-cv-00322 |
| | § | |
| SANTA FE INDEPENDENT | § | |
| SCHOOL DISTRICT, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6). Dkt. 23. Having reviewed the briefing, the live complaint, and the applicable law, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

The allegations that follow are set forth in Plaintiff's First Amended Complaint and told in the light most favorable to Plaintiff, Chase Yarbrough ("Yarbrough").

Yarbrough began playing football in 7th grade at Santa Fe Junior High in Santa Fe Independent School District ("Santa Fe ISD"). Yarbrough continued playing football until his sophomore year at Santa Fe High School ("SFHS"). The circumstances underlying this suit took place during his sophomore year at SFHS.

On September 21, 2016, Yarbrough attended football practice during 4th period and participated in scrimmage drills. One drill required Yarbrough to prevent another player across from him, C.P., from crossing the line of scrimmage. According to Yarbrough, at the time of this drill, he "weighed approximately 130–140 pounds," and C.P. "was an older, more skilled, and substantially larger player." Dkt. 21 at 11. Notwithstanding the size difference,

Yarbrough alleges that during the drill he and C.P. repeatedly collided, helmet to helmet and upper body to upper body. Yarbrough contends that the drill was conducted "at the direction, orchestration, instruction, oversight, and requirement of the" coaches. *Id.* at 12. "Indeed, the coaches yelled at Yarbrough and other players to line up again, and again, and again, and to hit harder, harder, harder." *Id.* The coaches never attempted to stop or prevent the potentially dangerous contact.

After 4th period practice, Yarbrough changed clothes and went to lunch, where he began experiencing a severe headache. He contacted his mother, who instructed him to go to the school nurse. He did. The school nurse sent Yarbrough to the football trainer, Brooke Griffin ("Griffin"). Griffin instructed Yarbrough to not participate in afternoon practice. As instructed, Yarbrough did not participate in that afternoon's practice.

Following afternoon practice, Yarbrough reported to Griffin that he was still experiencing a severe headache. Griffin advised him that he might have a concussion. She sent Yarbrough home with instructions to rest and report back to her if his symptoms continued into the next day. The next day, Yarbrough still had a headache and again spoke with Griffin. Griffin directed him to seek medical treatment.

On September 23, 2016, Yarbrough went to the Houston Methodist Orthopedic & Sports Medicine Clinic, where he was diagnosed with a concussion and a cervical strain/sprain. The physician also advised Yarbrough that he likely suffered a concussion prior to the September 21, 2016 football practice and had been practicing with a concussion for a few weeks.

Following the September 23, 2016 diagnosis, Yarbrough continued to experience various concussion-related symptoms. As a result, he filed this suit against Santa Fe ISD; E. Leigh Wall, Ph.D. ("Dr. Wall"), the Santa Fe ISD Superintendent; Mark Kanipes ("Kanipes"), the Athletic Director and Head

2

Coach of the SFHS football team; Richard Davis ("Davis"), Jess Golightly ("Golightly"), Mathew Bentley ("Bentley"), Christopher James Cavness ("Cavness"), Taylor Wulf ("Wulf"), and Raymond Buse ("Buse"), who are all Assistant Football Coaches at SFHS; and Griffin, the football team's trainer.[1]

Under 42 U.S.C. § 1983, Yarbrough alleges that Defendants violated his Fourteenth Amendment right to bodily integrity by subjecting him to dangerous football drills.[2] In addition to his claim against the Individual Defendants, Yarbrough seeks to impose municipal liability against the school district.

Defendants have moved to dismiss this case on multiple grounds. At the top of the list is Defendants' contention that Yarbrough has failed to allege a violation of a constitutional right. Defendants also argue that the Individual Defendants are entitled to qualified immunity.

## RULE 12(b)(6) MOTION TO DISMISS

To obtain relief from a federal court, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Failure to comply with this pleading requirement can result in an early dismissal of the entire lawsuit for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

---

[1] I refer to all the defendants collectively as "Defendants." I refer to Dr. Wall, Kanipes, Davis, Golightly, Bentley, Cavness, Wulf, Buse, and Griffin, collectively, as "Individual Defendants."

[2] In the First Amended Complaint, Yarbrough organized his claims as if it were two different causes of action. *See* Dkt. 21 at 19, 26. Defendants contend that even though Yarbrough states that he has asserted two causes of action, "in reality, there is only one: a deprivation of his right to bodily integrity under Section 1983." Dkt. 23 at 11. Yarbrough seems to concede this point in his response. *See* Dkt. 29 at 11 ("[T]hroughout the First Amended Complaint [Doc. 21], Yarbrough alleges violations of his constitutional right to 'bodily integrity' under Section 1983.").

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion tests the formal sufficiency of the plaintiff's complaint but should not be used to resolve factual issues or the merits of the case. *See In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (It is the responsibility of the district court at the Rule 12(b)(6) stage to decide "whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.").

On a Rule 12(b)(6) motion, the plaintiff's complaint is viewed in the light most favorable to the plaintiff, and all well-pleaded facts are accepted as true. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). Because a complaint must be liberally construed in favor of the plaintiff, a motion to dismiss under Rule 12(b)(6) is generally viewed with disfavor and is rarely granted. *See Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).

## DISCUSSION

### A.   THERE IS NO CONSTITUTIONAL VIOLATION

"To state a cause of action under § 1983 for violation of the Due Process Clause, [Yarbrough] must show that [he has] asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that [he was] intentionally or recklessly deprived of that interest, even temporarily, under color of state law.'" *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (quotation omitted). Under the Fourteenth Amendment, there is a substantive due process right to be free from state deprivation of one's bodily integrity. *See Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *Taylor*, 15 F.3d at 450–51. To state a claim for violation of his liberty interest in bodily integrity, Yarbrough must show either (1) that the constitutional violation was caused by a state actor or (2) that Defendants had a constitutional duty to protect

4

him a nonstate actor. *See Doe v. Covington Cnty. Sch. Dist. Ex rel. Keys*, 675 F.3d 849, 855 (5th Cir. 2012). Yarbrough cannot maintain a claim under the first prong because he was injured (concussion) by a non-state actor, his teammate. The question, then, is whether the Defendants had a constitutional duty to protect Yarbrough from his teammate.

The Supreme Court has held that the government has no duty to protect citizens from deprivations of liberty by third parties, except when the government has a "custodial special relationship" with the plaintiff. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). Several of the Fifth Circuit's "sister circuits have read the *DeShaney* opinion to suggest that in addition to the 'special relationship' exception to the general rule against state liability for private violence, a state may be liable for private violence if it created or exacerbated the danger." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010). This is often referred to as the "state-created-danger" exception. The Fifth Circuit has "repeatedly declined to recognize the state-created danger doctrine in this circuit," but even if it had, Yarbrough has not pleaded sufficient facts to support either the special relationship or state-created-danger exception. *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020).

First of all, Yarbrough's live pleading expressly disavows relying on the special relationship exception. *See* Dkt. 21 at 27 ("Plaintiff is not asserting liability based on a special relationship."). Even if Yarbrough did allege some sort of special relationship, that still would not move the needle because "a public school does not have a special relationship with its students for the purposes of the Due Process Clause." *S.M. ex rel. Munos v. Sealy Indep. Sch. Dist.*, No. CV H-20-705, 2021 WL 1599388, at *8 (S.D. Tex. Apr. 23, 2021) (collecting cases). *See also Covington*, 675 F.3d at 859 (A special relationship between the state and a person has been found to exist only where "the state has, through an established set of laws and procedures, rendered the person in its care *completely unable to*

5

*provide for his or her basic needs and it assumes a duty to provide for these needs*." (emphasis added)); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, No. 3:01-CV-1092-R, 2002 WL 1592694, at *3 (N.D. Tex. July 16, 2002) ("[T]he [school district] has not restrained [the plaintiff's] freedom to act on her own behalf . . . so as to give rise to a deprivation of liberty in violation of the Fourteenth Amendment, nor have the [plaintiffs] alleged any such restraint." (emphasis omitted)).

Given that Yarbrough is not alleging a special relationship, his only potential salvation is the state-created-danger exception. As mentioned above, the Fifth Circuit "has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented." *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004). But even if the Fifth Circuit did recognize the exception, Yarbrough's allegations are simply insufficient.

The present lawsuit is, in essence, a condemnation of the football culture which pervades much of society in this part of the country. Boiled down, Yarbrough contends that the game of football, with its constant physical contact, aggression and violence, is an inherently dangerous sport. Allowing high school football players to repeatedly hit each other, Yarbrough maintains, puts these youngsters in harm's way. Even assuming the truth of these allegations, Yarbrough has failed to state a viable constitutional claim under the Due Process Clause. The Fifth Circuit has noted that "the state-created danger theory, if it were to be recognized, would require knowledge of risk to a specific and known victim, not merely knowledge of risk to an identifiable group of potential victims." *Est. of C.A. v. Grier*, 918 F. Supp. 2d 619, 628 (S.D. Tex. 2013) (citing *Covington*, 675 F.3d at 865–66). "The law is clear, however, that the existence of a dangerous environment is not a state-created danger. The plaintiff must establish that the state created an environment dangerous specifically to a known

6

victim for a known reason, not a generalized risk." *Id.* at 627. Instead of claiming that the Individual Defendants were "aware of an immediate danger facing a known victim," *Lester v. City of Coll. Station*, 103 F. App'x 814, 815 (5th Cir. 2004), Yarbrough zeroes in on the overall danger of the sport and the coaches continuously urging players to meet aggression with aggression. Notably, Yarbrough does not complain that the coaches knowingly forced him to continue contact drills after he suffered a concussion. Because there are no allegations that the Individual Defendants knew of an immediate danger specific to Yarbrough when he participated in football practice, the "state-based danger claim [must] necessarily fail." *Pierce v. Hearne Indep. Sch. Dist.*, No. W:13-cv-00334, 2014 WL 11308099, at *10 (W.D. Tex. June 19, 2014) (collecting cases).

No district court in the Fifth Circuit has ever held that a high school athlete suffers a constitutional injury as a result of physical injuries incurred during practice. Given the Fifth Circuit's reluctance to embrace the state-created-danger exception in previous cases, I am hesitant to go out on a limb and be the first judge to adopt a previously unrecognized constitutional due process claim for high school football players injured on the gridiron. If the Fifth Circuit believes that high school athletes injured while participating in athletic endeavors enjoy a constitutional claim under the Due Process Clause, so be it. I'll let the judges in New Orleans pave the way.

Because Yarbrough has not adequately alleged a constitutional violation against the Individual Defendants, his constitutional claim against Santa Fe ISD must be dismissed. *See Brown v. Lyford*, 243 F.3d 185, 191 n. 18 (5th Cir. 2001) (Where a plaintiff does not state or otherwise show a constitutional violation, "there exists no liability to pass through to the" governmental entity.).

## B.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Even if the Fifth Circuit put its stamp of approval on a Fourteenth Amendment due process claim for high school athletes injured during football

practice, Yarbrough's claims against the Individual Defendants are nonetheless barred by the qualified immunity doctrine. "Qualified immunity shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fuentes v. Gomez*, No. 2:16-CV-390, 2018 WL 322161, at *3 (S.D. Tex. Jan. 8, 2018) (cleaned up). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court should not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

As explained above, Yarbrough's constitutional claim relies on the state-created-danger exception. Because "the Fifth Circuit has never recognized this 'state-created-danger' exception," Yarbrough has "not demonstrated a clearly established substantive due process right on the facts [he] alleges." *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020). Accordingly, the Individual Defendants are "entitled to qualified immunity on [Yarbrough's] Fourteenth Amendment claim." *Id. See also Fuentes*, 2018 WL 322161, at *10 ("[T]he state-created-danger theory as a basis of liability was not clearly established at the time the incident occurred and Defendants are entitled to qualified immunity.").

## CONCLUSION

For the reasons explained above, I recommend that Defendants' Motion to Dismiss (Dkt. 23) be **GRANTED**, and this case be dismissed in its entirety.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 25th day of May 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE